UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| HERBER S. SANGER, JR. and<br>WAGNER, MEYERS, & SANGER, P.C., | )<br>)<br>) |
| *Plaintiffs/Counter-Defendants*, | )<br>) |
| v. | )    No.: 3:14-CV-00541-PLR-CCS<br>) |
| BOWIE RESOURCES, LLC, | )<br>) |
| *Defendant/Counter-Plaintiff.* | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the plaintiffs' motion to dismiss and two motions to strike portions of the counter-complaint. [R. 16]. In their first motion, the plaintiffs allege a jurisdictional defect in the counterclaim. They also allege that Count II of the counter-complaint and the eighth affirmative defense should be stricken because there is no cause of action for violating the Tennessee Rules of Professional Conduct ("TRPC"). [R. 16]. After the plaintiffs moved to dismiss, the defendant amended the counter-complaint mooting the jurisdictional problem. The plaintiffs then filed a second motion, asserting that Count II of the defendant's amended counterclaim is redundant of two of the defendant's affirmative defenses and should be stricken pursuant to Federal Rule of Civil Procedure Rule 12(f). [R. 22]. For the reasons discussed below, the plaintiffs' motions will be denied.

In the underlying suit, the plaintiffs seek a $0.30 per ton commission for the buyout of a contract that they allege represents a purchase of approximately 10 million tons of coal. [R. 1, p. 5]. Beginning in July 2008, Mr. Sanger aided Bowie Resources in renegotiating a long-term contract with the TVA for the regular purchase of coal. For his services, Mr. Sanger initially received $0.20 per ton of coal that Bowie sold to the TVA. [R. 1, pp. 2-3]. This fee is memorialized in the "Letter Agreement" dated July 15, 2008. [R. 18, Exhibit 1]. In late 2012, Bowie was experiencing financial problems, and Sanger advised and assisted Bowie in obtaining a loan. [R. 1, p. 3]. In return for helping procure the loan, Bowie increased Mr. Sanger's rate to $0.25 per ton and agreed to go to $0.30 per ton if the TVA bought out the remaining contract. [R. 1, pp. 3-4]. Bowie memorialized the fee change in an email dated December 11, 2012 (the "Fee Amendment Email"). [R. 1, Exhibit 1].

In September 2014, the TVA bought out and terminated its contract with Bowie. TVA paid Bowie $62,000,000 to free itself from any obligations under the contract. Bowie did not deliver any coal, but, at the time of the buyout, the TVA was under contract for the purchase of approximately 10 million tons of coal. [R. 1, p. 5]. Sanger alleges that the buyout represents the purchase of approximately 10 million tons of coal and that he is entitled to a $0.30 commission for each ton. [R. 1, p. 5].

In their first motion to strike [R. 16], the plaintiffs move to strike the eighth affirmative defense and Count II of the counter-complaint, both of which seek to have the Fee Amendment Email declared void for violating the TRPC. The plaintiffs cite numerous cases for the proposition that a legal malpractice claim or other tort claim

2

cannot be maintained solely on a violation of ethical rules. *See, e.g. Lazy Seven Coal Sales, Inc. v. Stones & Hinds, P.C.*, 813 S.W.2d 400, 405 (Tenn. 1991); *Unarco Material Handling, Inc. v. Liberator*, 317 S.W.3d 227, 239 (Tenn. Ct. App. 2010). The plaintiffs' reliance on these cases is misplaced. The affirmative defenses and claims that plaintiffs seek to strike are not malpractice or tort claims; rather, they seek to have the Fee Amendment Email declared void for violating the TRPC. Tennessee courts have long recognized that conduct in violation of professional rules may render a contract void for violating public policy. *See, e.g., Swafford v. Harris*, 967 S.W.2d 319, 321-23 (Tenn. 1998); *Spiegel v. Thomas, Mann & Smith, P.C.,* 811 S.W.2d 528, 531 (Tenn. 1991). Accordingly, the motion to strike [R. 16] on these grounds will be denied.

In their second motion to strike [R. 22], the plaintiffs contend that Count II is redundant of affirmative defenses raised by the defendant in its answer and should therefore be stricken. Count II of the counterclaim seeks a declaration that the Fee Amendment Email is void and unenforceable because: (1) Sanger violated public policy when he failed to advise Bowie to seek independent counsel regarding the fee change; and (2) the fee change was not supported by consideration. The affirmative defenses raise similar arguments: the seventh affirmative defense contends the claim is barred because one or more of the agreements violate public policy, and the eighteenth defense states that the claims are barred because the modification of the fee was made without consideration.

A court may strike redundant matters from the pleadings under Federal Rule of Civil Procedure 12(f). This power rests "upon the discretion of the trial judge," *Schlosser*

3

*v. Univ. of Tenn.*, 2014 WL 5325350 at *2 (E.D. Tenn. 2014); but striking a pleading is "a drastic remedy to be resorted to only when required for the purpose of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953). A counterclaim is redundant when "it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Pettrey v. Enter. Title Agency, Inc.,* 2006 WL 3342633 at * 3 (N.D. Ohio 2006) (citing *Aldens, Inc. v. Israel Packel*, 524 F.2d 38, 51-52 (3d Cir.1975)). A claim that serves a "useful purpose" is not redundant. *Id.* (citing Wright, Miller & Kane, 6 Federal Practice & Procedure 2d. § 1406); *see also Erickson v. Brock & Scott, PLLC*, 2009 WL 4884424 (W.D. Tenn. 2009). Often, instead of striking a claim, "[t]he safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action." *Id.* (citing Wright, et al., *supra,* § 1406).

In this case, the claims in Count II do reiterate the issues raised by affirmative defenses seven and eighteen. But it is possible that the main action could be disposed of without reaching these affirmative defenses. In a situation where the issues in the affirmative defenses are not litigated, Count II would serve a useful purpose. For example, if this Court were to find Bowie did not owe any commission in instances where Bowie did not deliver coal, then the enforceability of the Fee Amendment Email would never be addressed because it would not be relevant whether the commission was $0.20, $0.25, or $0.30. Disposition on such grounds would not resolve the other counterclaims raised by defendant that are dependent on resolution of the enforceability

4

of the Fee Amendment Email.  For instance, Count III is a breach of contract claim against Sanger, in part for billing Bowie according to the Fee Amendment Email at a $0.25 rate, rather than the $0.20 rate in the Letter Agreement.  To determine whether billing at a rate of $0.25 constituted a breach of contract, the Court would need to evaluate the enforceability of the Fee Amendment Email. In sum, the request for a declaratory judgment as to the enforceability of the Fee Amendment Email serves a "useful purpose" and is not redundant of the affirmative defenses.

Finally, even if the affirmative defenses are reached and Count II is mooted, the plaintiffs will have suffered no prejudice by leaving Count II in the counterclaim. The issues will be argued whether the count is stricken or not. Accordingly, there is no reason for the Court, at this early stage, to exercise the drastic remedy of striking this claim.

The plaintiffs' motion to dismiss [R. 16] is **Denied as moot**, and both motions to strike [R. 16, 22] are **Denied**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**